## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

Kirk et al.,

                Plaintiffs,

                v.

Clark Equipment Company,

                Defendant.

Case No. 3:17-cv-50144

Judge John Robert Blakey

## MEMORANDUM OPINION AND ORDER

Plaintiff Tyler Kirk injured his foot and ankle when the skid-steer loader he was driving for his employer tipped over. He and his wife, Melissa Kirk, sue Defendant Clark Equipment Company, the loader's manufacturer, for strict liability under a design defect theory (Count I) and for loss of consortium (Count II). [58]. Defendant now moves for summary judgment [79] and to exclude Plaintiffs' liability expert, Daniel Pacheco [76]. For the following reasons, this Court grants both motions.

## I.   Background

### A.   Tyler's Accident

Third-party Defendant Sterling Steel Company (Sterling)[1] employed Tyler as a torchman at its factory in Sterling, Illinois. [81] at ¶ 1. As part of his job duties, Tyler operated the Bobcat Model S130 Skid-Steer Loader at issue (the Loader) to

---

[1] Defendant filed a third-party contribution claim against Sterling. [44].

clean under roll lines at the factory. *Id.* at ¶ 2. To do so, Tyler drove the Loader up and down a concrete ramp that he approximates inclined at a 30-degree angle. *Id.*

On May 12, 2015, Tyler operated the Loader, equipped with a 62-inch low profile bucket attachment, to clean scale material at the factory. *Id.* at ¶ 3. Operating the Loader, Tyler scraped material from the floor into the bucket, and then transported the material up the concrete ramp approach. *Id.* at ¶ 4. Tyler asserts that the Loader began to bounce and tip forward as he prepared to dump the material onto a dump pile at the top of the ramp. *Id.* at ¶ 5; [86] at ¶ 5. He then placed his right foot near the front opening of the Loader in an attempt to stabilize himself; his foot then slipped out and became caught between the Loader's life-arm cross member and mainframe cross member as the lift arms descended. [81] at ¶ 6; [86] at ¶ 6.

No one witnessed Tyler's accident. [81] at ¶ 8. Defendant asserts that Tyler does not know "how full the bucket was or how the load looked" at the time of the accident, [81] at ¶ 8; Tyler maintains that as he approached the dump pile, the bucket was raised about chest high, he could see beneath the bucket, and it was possible the load extended over the top of the bucket, [86] at ¶ 8.

Tyler claims that he suffered serious injuries to his foot and ankle and that, as a result, he underwent multiple surgeries and hospitalizations and experienced permanent right leg disability and the loss of his job. [81] at ¶ 7; [86] at ¶ 7.

**B.    The Loader**

The Loader is primarily used for earth-moving, including digging, carrying, and dumping loose materials with a bucket attachment. [81] at ¶ 12. At the time of

Tyler's accident, the Loader was equipped with solid rubber tires, rear axle counterweights, and a heavy rear work light guard fabricated post sale. *Id.* at ¶ 9. Combined, these features served to increase the Rated Operating Capacity (ROC) of the Loader, or in other words, the weight that the bucket could safely carry, to approximately 1,420 pounds. *Id.* at ¶ 10.

### C. Plaintiffs' Liability Expert

Plaintiff retained Daniel Pacheco as his liability expert. [77-1]. Since 1964, Pacheco has been employed in various engineering positions and has been licensed as a professional engineer since 1970. *Id.* Since 1989, Pacheco has served as the President of Polytechnic, Inc., providing forensic engineering analyses of mechanical engineering issues, including the evaluation of the design and implementation of material handling equipment. *Id.*

In his eight-page report, Pacheco renders opinions on both design flaw and causation. As to design, he opines that the Loader was "unreasonably dangerous for its intended and foreseeable use because it had the innate propensity to not perform as the consumer/operator would expect." *Id.* at 8. More specifically, Pacheco contends that the Loader's "design providing for the use of the 62" LP bucket . . . made it highly likely, if not certain, that the bucket would be loaded in excess of the loader's Rated Operating Capacity of 1300/1400 lbs." *Id.* Pacheco opines that limiting the size of the bucket to a 54-inch capacity "would have prevented exceeding the Rated Operating Capacity of 1300/1400 lbs. and prevented the tip forward at the time of Mr. Kirk's injury." *Id.* at 9.

3

As to causation, Pacheco opines that the "unreasonably dangerous condition" of the Loader equipped with the 62-inch bucket "directly contributed to cause the leg injury suffered by Tyler Kirk because the sudden tip forward resulted in Mr. Kirk's proper attempt to lower the bucket while his leg was instinctively and inadvertently [sic] positioned in the zone where it was crushed between the descending lift arm cross member and loader frame."  *Id.*

## II.   Legal Standard

### A.     Rule 702 and *Daubert*

Federal Rule of Evidence 702 and the Supreme Court's decision in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) govern the admissibility of expert testimony.  Expert testimony is admissible under Rule 702 if technical or specialized knowledge "will assist the trier of fact to understand the evidence or to determine a fact in issue." Essentially, district courts act as gatekeepers and must ensure that expert testimony "is not only relevant, but reliable."  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (internal quotation marks omitted).  Relevant factors in this determination include testing, peer review, error rates, and acceptance by the relevant expert community.  *See Daubert*, 509 U.S. at 593–94.  The reliability inquiry is flexible, however, and not all of these factors will apply in every case.  *See Kumho*, 526 U.S. at 141.

In assessing the admissibility of expert opinions, courts do not focus upon "the ultimate correctness of the expert's conclusions," *Schultz v. Akzo Nobel Paints, LLC*, 721 F.3d 426, 431 (7th Cir. 2013), but "solely on principles and methodology," *Daubert*, 509 U.S. at 595.  The "soundness of the factual underpinnings" and

4

"correctness of the expert's conclusions" may affect any ultimate determination on the merits, but do not govern admissibility. *See Smith v. Ford Motor Co.*, 215 F.3d 713, 718–19 (7th Cir. 2000). The expert must explain his or her methodology and cannot "simply assert a bottom line." *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 761 (7th Cir. 2010). Finally, the expert "may be qualified by knowledge, skill, experience, training, or education." *See Smith*, 215 F.3d at 718 (internal quotation marks omitted). District courts have "great latitude in determining not only *how* to measure the reliability of the proposed expert testimony but also whether the testimony is, in fact, reliable." *United States v. Pansier*, 576 F.3d 726, 737 (7th Cir. 2009).

### B. Summary Judgment

Summary judgment is proper where there is "no dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In determining whether a genuine issue of material fact exists, this Court must construe all facts and reasonable inferences in the light most favorable to the non-moving party. *King v. Hendricks Cty. Commissioners*, 954 F.3d 981, 984 (7th Cir. 2020). The non-moving party bears the burden of identifying the evidence creating

an issue of fact. *Hutchison v. Fitzgerald Equip. Co., Inc.*, 910 F.3d 1016, 1021–22 (7th Cir. 2018). To satisfy this burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Barnes v. City of Centralia, Illinois*, 943 F.3d 826, 832 (7th Cir. 2019). Thus, a mere "scintilla of evidence" supporting the non-movant's position does not suffice; "there must be evidence on which the jury could reasonably find" for the non-moving party. *Anderson*, 477 U.S. at 252.

## III.  Analysis

Defendants move to exclude Pacheco's opinions [76] and for summary judgment [79]. Because Plaintiff requires expert testimony to prevail, the motion to exclude is dispositive of the case, and this Court accordingly begins its analysis here.

### A.     Motion to Exclude Pacheco

In moving to exclude, Defendant argues that Pacheco failed to employ a reliable methodology for arriving at his opinion. [77] at 12. Pacheco opines that the Loader is defective only when equipped with a 62-inch or larger bucket, because the size of the bucket allows for a load so heavy that it causes the Loader to tip over; he also opines that, in this case, the defect in fact caused Tyler's accident. [77-1] at 8–9; [77-2] at 17. Upon review of Pacheco's report and deposition testimony, this Court agrees that the record reflects "too great an analytical gap" between the undisputed portions of the factual record and Pacheco's opinions on design flaw and causation, rendering the opinions unreliable, and ultimately, inadmissible. *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997).

6

As to his opinion that the Loader is defective, Pacheco speculates that the "very short wheelbase of the machine (less than three feet), in conjunction with the load in the bucket, causes a designed propensity for the loader to tip forward because, unknown to the operator, the foreseeable load in the 62" bucket could exceed the Rated Operating Capacity." [77-1] at 8. Pacheco does not explain the basis for this opinion, and Pacheco cites no scientific studies, treatises, or other generally accepted industry standards to support this bare conclusion. *See generally* [77-1]. Nor does he offer data from other similar accidents involving either this particular Loader or even similar skid-steer loaders. *Id.* Despite the opportunity for testing and inspection, Pacheco concedes he performed no testing or inspection of any kind as to the equipment (or accident site) at issue, in order to support his conclusion that the 62-inch bucket, in fact, results in tipping when filled with excess weight. [77-2] at 24. In short, Pacheco fails to utilize a proper factual basis or discernible methodology to support his conclusion that the Loader is unreasonably dangerous, rendering that portion of his opinion wholly unreliable. *Korte v. Exxonmobil Coal USA, Inc.*, 164 F. App'x 553, 557 (7th Cir. 2006) (affirming exclusion of expert who "formed his opinion without sufficient scientific evidence confirming the validity of this premise.").

Pacheco's causation opinion is similarly unreliable. In concluding that the Loader's alleged design flaw caused Tyler's accident, Pacheco utilizes no identifiable scientific or systemic method. Instead, Pacheco appears to come to his causation opinion through his observations that: (1) the Loader's manual and training materials advise operators that it "can tip forward if the bucket is overloaded"; and that (2)

7

industry "literature shows that forward tipping of skid steer loaders . . . has been one of the most frequent causes of injury and death from use of such equipment." [77-1] at 6, 7. But an analytical gap exists between the fact that overloaded buckets on skid-steer loaders *can* cause a loader to tip and the conclusion that *this particular* Loader's 62-inch bucket *caused* the overloading and subsequent tipping in this instance. Pacheco fails to bridge this gap. He concedes that he does not know the weight of the Loader's bucket at the time it tipped, [77-2] at 30, much less whether the weight in the bucket actually exceeded the ROC at the time it tipped, *id.* at 14. Moreover, as discussed above, Pacheco performed no testing on the Loader or an exemplar loader to confirm his theory of causation; nor does there exist any evidence of peer review or general acceptance of his conclusory theory.

Additionally, Rule 702 directs courts to consider "whether the expert has adequately accounted for obvious alternative explanations." Fed. R. Evid. 702 (2000) Committee Note. Pacheco fails here as well, as his report lacks reference to any obvious potential alternative causes of Tyler's accident, such as Tyler's speed while driving the Loader, the grade and quality of the ramp, possible operator error, or potential damage to the Loader itself, among other factors. [77-1]. In fact, Pacheco conceded at his deposition that he does not know how fast Tyler was traveling at the time of the accident, [77-2] at 21; never visited the Sterling factory, *id.* at 8; never independently verified the grade of the ramp, *id.*; and never inspected the Loader, *id.* at 8. Pacheco thus failed to fully investigate facts that could be germane to alternative causes of Tyler's accident, further underscoring the unreliability of his

causation opinion. *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 787 (7th Cir. 2017) (affirming exclusion of expert in part because he "failed to account for other possible explanations in arriving at his conclusion"); *Brown v. Burlington N. Santa Fe Ry. Co.*, 765 F.3d 765, 774 (7th Cir. 2014) (affirming exclusion of expert for failing to investigate and rule out any serious alternative causes).

Ultimately, Pacheco's proffered opinions fall short of meeting any of the reliability factors articulated in *Daubert*—testing, general acceptance, peer review, error rates. 509 U.S. at 593–94. These deficiencies demonstrate that Pacheco's methodology fails to meet the requisite "level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho,* 526 U.S. at 152; *C.W. ex rel. Wood v. Textron, Inc.*, 807 F.3d 827, 837 (7th Cir. 2015). This Court thus excludes Pacheco's opinions in their entirety.

## B. Defendant's Motion for Summary Judgment

Pacheco's exclusion is fatal to Plaintiffs' claims on which Defendant moves for summary judgment. To prove his strict liability design defect claim (Count I), Tyler must establish: (1) a condition of the product as a result of design, (2) that made the product unreasonably dangerous, (3) and that existed at the time the product left the defendant's control, and (4) an injury to the plaintiff, (5) that was proximately caused by the condition. *Clark v. River Metals Recycling, LLC*, 929 F.3d 434, 439 (7th Cir. 2019) (citing *Mikolajczyk v. Ford Motor Co.*, 901 N.E.2d 329, 345 (Ill. 2008)).[2]

---

[2] The parties agree that Illinois law governs. [80] at 7; [85] at 7–9.

Without Pacheco's testimony, Plaintiff fails to raise a triable issue on two essential elements on his claim: unreasonably dangerous design and causation.

First, Illinois courts recognize that in "design defect cases involving a specialized piece of equipment, the design and manufacture of which requires specialized knowledge, expert testimony is required unless the defect is obvious and thus within a juror's common understanding and experience." *Lott v. ITW Food Equip. Grp. LLC*, No. 10 CV 1686, 2013 WL 3728581, at *25 (N.D. Ill. July 15, 2013); *see also Clark*, 929 F.3d at 439 (Illinois design defect actions "often involve specialized knowledge or expertise outside the layman's knowledge," and thus may require expert testimony) (quoting See *Baltus v. Weaver Div. of Kidde & Co.*, 557 N.E.2d 580 (Ill. App. Ct. 1990)); *Show v. Ford Motor Co.*, 659 F.3d 584, 585 (7th Cir. 2011) ("Several intermediate appellate decisions in Illinois say that expert testimony is vital in design-defect suits when aspects of a product's design or operation are outside the scope of lay knowledge."). Thus, where a plaintiff lacks admissible expert testimony to prove that a design of a specialized piece of equipment renders it unreasonably dangerous, the court must grant summary judgment to the defendant. *See Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 899 (7th Cir. 2011) (affirming summary judgment where district judge excluded the plaintiff's expert on the design of a scaffold).

Here, the Loader is not a simple product that lay jurors commonly see or use, but a specialized piece of industrial equipment that falls outside of a juror's common understanding and experiences. *See Henry v. Panasonic Factory Automation Co.*, 917

N.E.2d 1086, 1092 (Ill. App. Ct. 2009) (affirming summary judgment where the plaintiff lacked expert testimony on whether an industrial machine was unreasonably dangerous); *Fulton v. Theradyne Corp.*, No. 06 C 1321, 2007 WL 772953, at *4 (N.D. Ill. Mar. 12, 2007) (granting summary judgment on design defect claim where the plaintiff failed to present admissible expert evidence regarding the design of a medical device); *cf. Clark*, 929 F.3d at 440 (a product such as a chair might be "so simple" such that expert testimony is unnecessary to explain to a jury why its design renders it unreasonably dangerous). Accordingly, Tyler needs expert or other supporting testimony to prove that the Loader's design, in fact, rendered it "unreasonably dangerous." *Clark*, 929 F.3d at 440. But because this Court has excluded Pacheco, Tyler has none, thus foreclosing his ability to prove this essential element of his claim.

Pacheco's exclusion similarly dooms Tyler's evidence of causation. Where, as here, a product's design and operation "are beyond the understanding of a lay person," Illinois courts require a plaintiff to present expert testimony to establish that a product's alleged design flaw proximately caused his or her injuries. *Horne v. Home Depot U.S.A., Inc.*, No. 17 CV 8080, 2019 WL 556709, at *7 (N.D. Ill. Feb. 12, 2019); *Show v. Ford Motor Co.*, 697 F. Supp. 2d 975, 982 (N.D. Ill. 2010), *aff'd*, 659 F.3d 584 (7th Cir. 2011). Here, Tyler requires an expert to explain the mechanics of the Loader, and specifically, the science behind the theory that the bucket's weight caused the Loader to tip over. Pacheco's exclusion, however, leaves Tyler with solely his own inadmissible speculation that a design flaw in the Loader caused his injuries.

Thus, Tyler fails to raise a triable issue as to causation on this record. *Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904–05 (7th Cir. 2007) (affirming summary judgment of products liability claim where no other evidence of causation existed outside of excluded expert's testimony).

Because Tyler fails to create a triable issue on two elements of his design defect claim, this Court grants summary judgment to Defendant on Count I. *In re Zimmer Nexgen Knee Implant Prod. Liab. Litig.*, 218 F. Supp. 3d 700, 721 (N.D. Ill. 2016) (if "an element of a claim requires expert testimony and that expert testimony is inadmissible under *Daubert*, the court must grant summary judgment on that claim"), *aff'd sub nom. In re Zimmer, NexGen Knee Implant Prod. Liab. Litig.*, 884 F.3d 746 (7th Cir. 2018). Moreover, because Melissa's loss of consortium claim (Count II) derives from and depends upon the viability of Tyler's design defect claim, this Court also grants summary judgment to Defendant on that claim. *See Ramirez v. City of Chicago*, 129 N.E.3d 612, 620 (Ill. App. Ct. 2019). Finally, this Court dismisses Defendant's third-party contribution claim against Sterling as moot. 740 ILCS 100/2.

## IV.     Conclusion

For the reasons explained above, this Court grants Defendant's motion to exclude Pacheco [76], and grants Defendant's motion for summary judgment [79]. The Clerk is directed to enter judgment for Defendant on both counts of Plaintiffs' amended complaint [58].    In light of the foregoing, Defendant's third-party contribution claim [44] against Third-Party Defendant Sterling is dismissed as moot. Civil case terminated.

Dated:  September 18, 2020

Entered:

John Robert Blakey
United States District Judge